The next case will be 2006-1255 Savvier v. E&B Exercise LLC Savvier v. E&B Exercise LLC Mr. Forrest, whenever you're ready. The errors of the district court were detailed in the appellant's brief and were essentially uncontested in the appellee's reply brief. Therefore, if it please the court, this morning I'd like to address two issues. One is the standard of review and the other is the conclusion that I think this court should reach and the reasons for it. In a preliminary injunction case, the standard of review is generally an abuse of discretion. However, because of particular facts in this case, I assert that the standard of review is a de novo standard. The facts that lead to that are, first of all, the district court decision rested on a single one of four factors that traditionally are used in equity. It rested solely on whether or not the plaintiff has shown a reasonable likelihood of success on the issue of infringement. In making that decision, the court made a number of errors of law which are outlined in great detail in our main brief. But we've even changed our own claim construction, saying that preliminary injunctions are just that, preliminary, premature. And even if we've adopted a claim construction in a preliminary injunction setting, we have felt free to reverse it on at least two occasions when we had a full record before us. That's correct, Your Honor. So why is it de novo? Isn't in fact that a pretty open recognition that we're not dealing with a pure question of law here? On the errors of the court, you are dealing with a pure question of law. The errors of the court below essentially decided that the elements in the claim were in the infringing device, but then excused infringement in the case of the 427 patent, excused infringement on the basis that there was additional functions, that these elements provided additional functions in the infringing device. And so that is an old rule of law that even back in the Court of Claims was ruled on in a de novo case in a de novo fashion. And if the court finds that indeed the district court did excuse infringement on the basis of additional functions, then the court would have to find, then what remains is what the court held was the infringing elements. What's the specific error in claim construction that you point to? The specific error in claim construction in the 427 patent, the error was, the most basic error was excusing infringement because the elements in question performed a different function. They performed, not only performed a function of the first elastic anchor member, not only performed a function of anchoring the elastic, but it also performed a function, part of the function of changing the resistance. And there's nothing in the claims about changing the resistance, and therefore importing into the claims the fact that they performed a function of changing resistance is error. Does that address your point? You're talking about the, I'm still looking for what language in the claim you think was improperly construed. Are we in the 742 patent? We're in the 742 patent. Okay, and are we talking about the attached to said first member? The anchor? A second elastic anchor member attached to said second member. And said first elastic member, said first member slightly fitting within the second member, with the first elastic anchor member longitudinally slidable within said second member. Where was the error in that? The error was that the court, here's what the court said. Well, the court found that while the first and second member may consist of more than one elastic piece, the pieces function together as one unit, right? Isn't that what the court found? Where does it say in the claim that the pieces have to function together as one unit? But that was a finding of the court. Where was that an error as far as the claim construction is concerned? It was error because it's importing into the claim the fact these pieces have to be one unit, and it's also, the court said with respect to the first elastic anchor member, in the Abheidner II device, the function of the first elastic anchor member is performed by both the bracket posts and shaft posts. So it found that indeed there was a first elastic member, and that excuses infringement because this first elastic anchor member also allowed the user to change the resistance. And then in the case of the claim 14 of the 742 patent, the district court stated the cylinder is not just a cover for the elastic bands, but is also the mechanism for selecting resistance. So the court there says that indeed there is a cover, okay? But then it says that because it's the mechanism for selecting resistance, he's not going to find infringement. Now there's nothing in the claim about selecting resistance. So the court is finding, excusing infringement, because this mechanism, this cover, is used for selecting resistance, but there's nothing in the claim about selecting resistance. Does that answer your question? I would like to... Recently the Supreme Court held in eBay versus Merck... The Supreme Court held in eBay versus Merck exchange that in filing a preliminary injunction, deciding on a preliminary injunction, the courts in a patent case have to use the traditional standard of equity, that is the four factors. Now there are some people that think that the courts have been giving too many injunctions, too many permanent injunctions, but there's nobody, nobody, there's not a lawyer that will believe that in preliminary injunction cases that there's too many preliminary injunctions. And the reason for that is that the courts, the district courts, do not want to get into the complexity of a patent case at the preliminary injunction level, and therefore they don't find preliminary injunctions. In fact, in preliminary injunctions the rule, the de facto rule, is quite the opposite than for permanent injunctions. The de facto rule is that only in the rarest of cases will one find a preliminary injunction. I believe that's wrong and that's hurting the patent system. Because you cannot, you essentially can't get preliminary injunctions in patent cases, the small companies simply are out of the patent system because small companies and individual inventors can't afford the extensive litigation and losing profits while they're litigating as big companies can. Now because of that, because of that issue, because small companies cannot afford that, the equity has put in all these four factors, these additional three factors that are considered in a true equitable decision on injunctions. Now in this case, the plaintiffs, the defendants and appellees did not even submit any evidence on any factors except the infringement factor. The court could not have, the court cannot consider in this preliminary injunction case any of those other factors. I'm still, he's dealing with a likelihood here. Yes, a likelihood, yes. You really want us to construe the claims for you, don't you? No, I don't. Oh yes, I do. I do, I would like for you to do that. But why should we do that when we have concededly a premature record, that all the evidence isn't in, it's, there was, on the second patent, we had extensive expert testimony on what is a common plane or a parallel plane. And that's exactly the problem. I understand that completely. Your Honor, I understand that completely. I would have thought that we were going to hear in a minute that the problem is that the judge relied on a dictionary that was completely out of context with the specific nature of this. But in a preliminary injunction, the law, the equitable law, says you have to consider all these four factors. You have to do. You can't just throw out, say, we're going to construe this later and so we aren't going to construe it now and leave the plaintiff, especially when it's a small company, completely bare. You're into your rebuttal now. Do you want to save some? Because you have covered that point already. You do want to save it, don't you? Yes, I do. Mr. Dunn. Thank you, Your Honor. May it please the Court. Judge Rader, I think you're absolutely correct. This is a preliminary injunction. The Court has construed the claims. Well, let's talk about it for a second. Let's start with the second one, the common versus parallel plane notion. And the judge relies heavily on a dictionary, which we've discounted significantly in our Phillips jurisprudence, and ignores an expert who says it could be a common plane. Indeed, the specification at one point says common or parallel plane. Error here? Your Honor, no, because the judge discounted the expert report because the expert report, the expert testimony, actually ignored something. It's not just the dictionary definition, the technical definition of plane, but it's the well-understood meaning of the word plane by one scale to the R. And that would be that a plane extends in all directions, infinite, and that planes that are parallel do not meet. And a single plane, or excuse me, in order to be parallel planes, there have to be two planes. A single plane, two dinner plates, and the judge was queerness on the oral argument, two dinner plates that are lying on the same horizontal table top are in the same plane, and they do meet. Those planes do meet. Since those planes meet, they intersect. They are not parallel planes. It's a common plane. A common and parallel are two different things. Parallel lines cannot be a single line. Parallel planes cannot be a single plane. But the language says common or parallel planes. Correct, Your Honor, because there are many embodiments in that patent which do in fact have parallel axial planes. The two arms of the exercise device do swing on different planes that are actually axially spaced. What about the common planes? That's the embodiment shown in Figure 9 does have a common plane as well as the embodiments in Figure 17, 18, 19. A lot of the embodiments do have a common plane. And other embodiments, including the first embodiment, has separate planes, parallel planes, where the pieces actually do cross over. So there are two different ways that this embedded concept can be embodied. One is a common plane, and the second is a parallel plane. So the expert's testimony then was correct, wasn't it? The example that was given by the expert? Common plane could be the dishes on the same plane. They're not stacked in parallel planes? Correct, the common plane would be the dishes on the table. That is correct. What the expert said is that the dishes stacked on a table are in parallel planes because the parallel planes of the plates would be limited to the actual geometric area of the plates. And these two planes don't intersect because one plane is over here and the other plane is over here. They're not intersecting, therefore they're parallel. The judge looked at the ordinary plane, everyday understanding of the term parallel planes. What about the specification that says common or? Correct, because they could be common or they could be parallel. The specification doesn't say common and parallel are synonymous. Which is common or parallel. Correct, it doesn't say they're synonymous because they are in fact parallel. You can use the term or as an indicator of a synonym, right? Absolutely, correct. You could also mean as two alternate devices. I could say this is my good friend Judge Gajarza or this is Arthur Gajarza, right? Correct. The same thing. Or it could be disjunctive. Or it could be disjunctive. Which is it in this case? In this case because you're talking about parallel planes and a common understanding of parallel requires two separately spaced planes. It can't be a common plane. A clear understanding of common from anyone that understands parallelism would be that two parallel lines are parallel if they don't intersect. Two planes are parallel if they don't intersect. Two dishes or two thigh engaging members that swing in the common plane are not parallel because it's a single plane. To be parallel you have to be parallel to something else. You can't be parallel to yourself. So the judge found, and this is not clear what he wanted, that one skilled in the yard is going to interpret this patent as common or parallel to mean that parallel is separate and distinct from common. Yes, it could be alternative. The judge is saying parallel meant what was shown, for example, in the front page of the patent, figure one. And as well as the other environments of the patent did have a common plane. Figure nine had a common plane. Other figures had parallel planes. Other claims clearly discussed actually spaced. In fact, the claims that were asserted against us below included claims that actually spaced planes that were trying to identify as common planes. So the judge made a finding. And that finding is not clearly released. It could be interpreted that common or parallel or synonyms, but that's not mandate. That's not what the judge found below. It's not what the judge found on the scale of the yard that interprets the claims to mean. Hopefully he didn't find anything since we say this is purely a matter of law. I'm sorry? I said hopefully he hasn't found any of those things since this court says this is purely a matter of law. Correct. This is just a point on how some late performance harm comes up. The judge did not find literal infringement. The appellant wants to keep arguing his literal infringement. The judge found that two pieces would be the first anchor member in the upcoming claim warrant, and he found that two separate elements of the accused device would have to be the cover member. Now the judge also found when you have two separate pieces in the accused device to be a single claim element that you're now in equivalence analysis, and he found that he did an equivalence analysis, which is not going to assert to be totally erroneous. What's asserted to be erroneous is that the judge did not find literal infringement. Now the way the accused device operates is there is a clear plastic housing member which has both ends of each rubber band attached inside it, but one can be moved down when you have the proper body. When you move that rubber band end out of the cylinder, it's out of the second anchor, which is the claim requires that the first anchor member slide longitudinally within the second member. If the clear plastic cylinder is the second member, the first anchor member slides outside. Secondly, the… Well, through it and outside, right? It goes… Through it? It's at the bottom and inside. It slides out of it. Correct. But in coming out of it, it goes through it. Yes. It doesn't go completely through it. It drops out of it. Yes. Yes. And why isn't the part of it that remains within, within? Because it says the first member has to be slidably fitted within the second member. It has to slidably fit within with the first elastic anchor member and be longitudinally slidable within that second member. When they fit, they don't fit together like that unless the first member is in the second member. The first member and the second member never get compacted. The first member is a rod, an elongated rod, which slides through the transparent cylinder. They never get compacted together. And that's the arrangement that's been defined in the claim. Now, at one point in the claim sticking with this ab-tightener question, we have a lower body support attached to the proximal end of one of the first member and then the other end of. Is that meant by this? There's a. . . You've got. . . It's got to be attached at one end to this one or the other end to the second member. How can that happen in the Q's device? If we look at the first member. . . I think Mr. Forrest will answer this question. If we look at the first member, that's the rod running all the way through. I think it will be the first member. That's attached to the part that engages the thigh. It also has one end. . . The lower body support attaches to both of them in your device, right? Correct. So it's not one of or the other. I agree. So that is. . . That's kind of complicated. I'm trying to figure it out. It's hard to figure out with. . . Is that why you didn't argue that in your brief? Because it just throws you into such horrible circles, yes. Okay. It's very clear, Your Honor, that the first member that's attached to the. . . Excuse me. The first anchor member attached to the first member. That would be the shaft post 10 attached to the elongated rod. That that doesn't anchor the elastic. Anchors. . . Everybody agrees. . . You didn't think we'd be smart enough to figure this out, huh? You're probably right. I wasn't smart enough. I'm not sure we've figured it out yet. I wasn't literate enough to explain it in a way that it made inherent sense. Because the claim language is. . . But what is clear, I think, which is incontrovertible, is that the shaft post 10 does not anchor the elastic. It does grab a bracket to pull the elastic down when you have everything properly aligned. But it doesn't anchor the elastic. If it didn't, the cylinder couldn't rotate to switch the elastic. That's the whole major difference between the two products, is that the Hughes product, the elastic anchor member, the elastic rubber bands are not anchored to the first member. They're totally anchored within the second member. So that the second member can rotate to change the resistance about disassembling the product. That brings us outside the literal language of the claim. It also brings us outside the doctrine of equivalence. Now, as a matter of law, you can't have two pieces performing the function of one element unless they're equivalents and they enter into an equivalent analysis. He says we weighed that argument. We argue below the judge found that the two elements that he's trying to make literal infringement do not cooperate and operate in the same manner and get the same result. The judge applied an equivalence argument. And then he says that's wrong. It's literal infringement. So the equivalent argument is wrong. And the equivalent argument is, of course, looking to other features of the product. So he says that's looking to something else to get outside of the claim. When all the judge is doing is using the doctrine of equivalence when you have two pieces trying to function as one. And if the law is two pieces to function as one as an equivalence argument, which the judge held and the judge found that the equivalence wasn't there, his argument of literal infringement fails. There is no literal infringement. It just doesn't matter in law. That's the one issue of law that's very clear here. If, in fact, we determine that the judge was wrong in finding the claim structure, should we do it or should we just send it back? I believe from Judge Rader's question earlier, Mr. Forrest, he would find that improper for this court now in such an incomplete record. We didn't have evidence here. The expert witness that thinks that two dinner plates are parallel planes wasn't cross-examined. This was a declaration. So he was never in court. It was just a piece of paper. It's not cross-examination. I'd hate for this court to rely on an expert opinion given by somebody who's not subject to cross-examination. Everything he's done in Rushmore's history. Well, if there aren't any factual reasons for these claim obstructions, why would it matter? Why do we need to send it back at any time? I don't believe we need to send it back, Your Honor, because the claim, there's a very clear issue here that the claims. You do not believe we should send it back? Or you do? I do not. I believe you just confirmed it. I thought you said that we should go back and create a record. Well, if we're going to have claim interpretation. If the court is going to know the reason. Well, that's the question I'm asking. Why fool with a free man? Why don't we just do it? Because the claim interpretation on the parallel claims issue is going to require an expert testimony, Judge Rady pointed out. Well, if it's expert testimony. No, Judge Rady didn't point it out. He asked a question. The question I have is, why would it? We say that the experts cannot, we don't find facts on these things. It's all a question of the law, this court, and its wisdom has said. So why are you asking to send it back down there to have hearings that are going to be pointless? Well, I agree. If we're talking about the first patent and the elastic anchor member and the two pieces can't be one piece on the liberal infringement, all of that's an issue of law. And the judge is absolutely correct in applying the law on that. There's been no error that's been signed as well. So that would be an affirmance. If we're going to adopt that common or parallel or synonyms, we'll use that understanding of the word or based on an expert testimony. I don't think the court has enough of a record to make that determination as a matter of law now. Because that's a factual issue. What did war mean in those claims? And can two dinner plates on a table be parallel claims? But we don't need any factual determinations. We can just determine it as a matter of law, can't we? By looking at the claim? Construing the claim itself? Yes, you can construe the claim in the ordinary meaning as the way the words parallel are understood by everyone that used the term parallel to be two different things. Have you read the recent opinions in the Amgen denial of en banc? No. No. I probably should. Yeah. I will in the next 15 minutes. Yeah. If you'd read those, I might have asked you whether this is the case to take en banc to discuss the standard of review in claim construction. And if you'd read that, you might be able to give me an answer. I guess you can. I would just be cheating from my instincts as a patent attorney. Got it. So my apologies. What was the question? For Amgen. I want to address a few of the minor points about the standard of claim construction. The word or in the common or parallel, in that sentence in the patent, was specifically referring to one embodiment, which was a common claim. Which one's that? The embodiment's figures 9 to 11 in the patent. It was specifically referring, that language specifically refers to that embodiment, and therefore it is a equivalent statement. It's not the other. With regard to the issue of whether or not you need to have a document equivalence argument if an element of the claim is embodied in two pieces of the infringing device, there's just no law on that. You can see immediately why that would be wrong. For instance, if you had a claim that says an attachment member and the patent used a screw, whereas the infringing device used a bolt and a nut, you simply wouldn't need a document equivalence argument to cover that. On the issue of, I'd like to address Judge Rader's issue that he brought up about whether or not you should construe the claims, I think certainly at least you should correct the errors, the aptly clear construction errors in the claims, because otherwise the court is going to make the same mistake again, and you're going to see the case again. So you should at least correct those and tell the court to correct those. Our presiding judge has correctly pointed out that it's a question of law, and that would argue in favor of doing what you said. We have, though, in two cases, said it's all preliminary, we're not bound to follow it in a preliminary injunction setting. What do you do with those? The CBI Beta case, of course, what I'm talking about, bendable glasses. I understand that, but I don't think you should do that in this case, because in this case... Do you perceive any inconsistency in our jurisprudence in that fact, in those cases? You know, the inconsistency I see has to do with the eBay case, in that this court sometimes says you only have to consider one element in considering an injunction. You can find an injunction with just one element. But the Supreme Court has said when you look at an injunction, you have to consider all four elements. You have to do in a patent case just as you would do in a contracts case. And that is important, because that's what saves the day for these small inventors and these small companies. That's why equity has that. And I think this is the case... Indeed, you should take this case, and it should be the case where you do a claim construction case. You did a marvelous claim construction case in Phillips. When I went to law school, they told us there's no substantive law unless you have a process. Phillips set out a process for reviewing patent cases. This court did not follow that process. If this court had followed this process, it would have turned out right. So I think this is the case. There's clear claim construction errors that this court can dig into if you read the brief... All right. Thank you, Mr. Foresh. The case is submitted.